## IN THE COURT OF APPEALS OF IOWA

No. 22-1189
Filed November 2, 2022

**IN THE INTEREST OF K.M.,**
**Minor Child,**

**R.R., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Cedar County, Gary P. Strausser, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Jeanette Keller of Bowman, DePree & Murphy, West Liberty, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Katie Reidy Abel, Tipton, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

A mother appeals the termination of her parental rights, claiming her close bond with the child should preclude termination. She also requests a six-month extension to reunify with the child. We find the mother's bond is insufficient to preclude termination and a six-month extension is not warranted. We affirm.

**I.    Background Facts & Proceedings**

K.M. came to the attention of the Department of Human Services (DHS)[1] after he tested positive for amphetamine and methamphetamine at birth. He was removed from the parents' custody on November 16, 2020, just days after his birth, and placed in foster care. The child was moved to a relative placement with his maternal aunt in May 2021, where he remains. This relative placement has expressed a willingness to adopt.

The mother has a long history of DHS involvement. Four children she cared for with her partner were adjudicated children-in-need-of-assistance (CINA) in 2017 and were placed outside the home.[2] The mother has also been involved in two other CINA proceedings related to two children born to the mother in 2017 and 2019. All of the proceedings involved her methamphetamine use. The mother's parental rights to those two children were terminated and the children were placed

---

[1] In 2022, the Iowa legislature merged the Department of Human Services with the Department of Public Health into the Iowa Department of Health and Human Services (DHHS), with the transition starting July 1, 2022. *See* 2022 Iowa Acts ch. 1131, § 51. Because the termination proceedings took place prior to July 1, 2022, our references to the Department remain as the Iowa Department of Human Services (DHS).

[2] Three of the removed children were the biological children of K.M.'s father but were not the mother's biological children. One of the children was the mother's biological child from a prior relationship. All the children were placed with the other biological parent or grandparents, and those cases are now closed.

with K.M.'s current relative placement. That placement has adopted one of the children and is currently in the process of adopting the second child.

The mother went through a psychological evaluation in July 2020, after which she was diagnosed with major depressive disorder, generalized anxiety, stimulant use disorder—amphetamine, alcohol use disorder, and dependent personality disorder with paranoid and avoidant personality traits. The evaluation noted, "Quite obviously, [the mother] is in dire need of substance use treatment as well as intensive mental health treatment." The evaluation recommended an inpatient dual-diagnosis program. To date, the mother has completed no substance-abuse or mental-health treatment.

The mother's involvement in this case has been minimal, leading to the juvenile court granting the State's motion to waive reasonable efforts in September 2021 and the cessation of services. From October 2020 through January 2021, the mother missed eleven drug tests.[3] From February 2021 through August, she missed an additional sixteen. She has only completed two drug tests, one of which was positive for methamphetamine. The mother has consistently denied her drug use, despite providers noticing behavioral indicators consistent with use.

The mother has also been minimally involved in visitation, all of which have been fully supervised. Of the nearly sixty visits offered from February until August, the mother attended only twenty-six. Of particular note, the mother attended only six of the last twenty-two available visits. Providers revealed the mother was always late to visits, would sometimes disappear for unknown reasons, and would

---

[3] Those tests were ordered as part of the mother's prior CINA cases.

sleep through some visits.  One visit in August 2021 ended when the police had to be called because of the mother's aggressive behavior toward providers.

The State moved to terminate the mother's parental rights.  A hearing was held November 1, 2021, two months after the waiver of reasonable efforts.  The juvenile court terminated the mother's parental rights under section 232.116(1)(e), (g), (h), and (*l*) (2021).  The mother appeals.[4]

## II.    Standard of Review

We review the termination of parental rights de novo.  *In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010).  While we normally review such terminations using a three-step analysis, the mother does not contest that a statutory ground for termination has been met and that termination is in the best interest of the child.  *See id.* at 39.  Therefore, we need not address those issues.  *Id.*

## III.    Close Bond

The mother claims the juvenile court should have declined to terminate her parental rights based on the close bond she shares with the child.  A juvenile court may decline to terminate parental rights when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  Iowa Code § 232.116(3)(c).  The exceptions to termination "are permissive, not mandatory."  *In re M.W.,* 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted).  The parent resisting termination bears the burden of proving the applicability of an exception.  *In re W.T.,* 967 N.W.2d 315, 322 (Iowa 2021).

---

[4] The father's rights were also terminated.  He is not a party to this appeal.

As an initial matter, we question the strength of the bond between the mother and child. The child was removed from the mother within a few days of his birth and, at the time of the termination hearing, was nearly one year old. The only evidence the mother presents regarding a bond is that the child seems happy and content when she is visiting. But the mother had not seen the child since September and only attended six of the last twenty-two scheduled visits. The DHS case-manager noted that there was no significant bond between the mother and child because of the infrequency of the mother's attendance at the visits. This evidence is insufficient to meet the mother's burden for this exception.

Even presuming a close bond, the evidence does not establish that termination would be detrimental to the child. The mother has taken no steps to address her substance-abuse or mental-health challenges, despite the psychological evaluation noting that it was "quite obvious" the mother needed treatment for those issues. She provided a single clean drug test through the entire duration of these proceedings, and missed sixteen drug tests that are presumed to be positive for drug use. The child is happy and bonded with the current placement, which includes living with two of the child's siblings. The bond between the mother and child does not preclude termination in this case.

## IV. Extension

The mother contends the district court should have granted an additional six months to reunify the mother and child. Chapter 232 permits a court to grant an additional six months based on a "determination that the need for the removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Little in this record suggests the mother will make sufficient progress to return the child to her custody over the next six months. As noted above, the mother has completed no substance abuse or mental health treatment since case initiation. Those concerns have existed since her first CINA proceedings in 2017. Even if she began treatment today, the DHS case manager testified that the mother would need longer than six months to complete treatment and demonstrate continued sobriety. The only progress the mother has made is obtaining employment roughly a month prior to trial. While this is a positive step, it falls dramatically short of the proof needed to grant an extension of time for reunification efforts, considering the mother's history and lack of cooperation with services. And while the mom testified, "I will do whatever it is I need to do" to get her child returned to her custody, she has failed to turn those words into action. She has not demonstrated a willingness to do anything but minimally participate in visitation throughout this case. Without any marked progress, the juvenile court properly determined a six-month extension was not warranted.

**AFFIRMED.**